IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville December 19, 2023

## JIM GEORGE CONASER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2018-D-2522    Steve R. Dozier, Judge**

_____

### No. M2023-00271-CCA-R3-PC

_____

A Davidson County jury convicted the Petitioner, Jim George Conaser, of aggravated assault, and the trial court sentenced him to serve a term of twelve years as a Range III, persistent offender. Thereafter, he filed a petition for post-conviction relief alleging that he was denied the effective assistance of counsel when trial counsel failed to object to character evidence and hearsay. The post-conviction court denied the petition after a hearing. On our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

Daniel J. Murphy, Lewisburg, Tennessee, for the appellant, Jim George Conaser.

Jonathan Skrmetti, Attorney General and Reporter; Courtney N. Orr, Deputy Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

### A.    TRIAL PROCEEDINGS

This case arises out of an aggravated assault committed by the Petitioner against the victim, Ms. Lori Stringfellow. In 2018, the victim lived near a convenience store

frequented by unhoused community members, including the Petitioner. The victim had allowed the Petitioner to stay at her home during bad weather but later barred him from staying with her due to various issues.

On May 12, 2018, the Petitioner encountered the victim at a McDonald's restaurant. He asked to visit her home for a shower, but she refused. Later that day, as the victim was in an alley behind a convenience store to help other people, the Petitioner appeared. He put a sock on his arm and threatened her with a metal pipe, swinging it close to her face. The victim, who was in a wheelchair, feared being hit due to a prior brain injury from domestic abuse. The Petitioner elected not to present evidence at trial.

A Davidson County jury found the Petitioner guilty of aggravated assault involving a deadly weapon, and the trial court sentenced the Petitioner as a Range III, persistent offender to serve a term of twelve years. This Court affirmed the Petitioner's conviction on direct appeal. *See State v. Conaser*, No. M2020-01354-CCA-R3-CD, 2022 WL 107619 (Tenn. Crim. App. Jan. 12, 2022), *no perm. app. filed*.

## B.    POST-CONVICTION PROCEEDINGS

On May 9, 2022, the Petitioner filed a petition for post-conviction relief alleging that he was denied the effective assistance of counsel at trial. Relevant to this appeal, the Petitioner alleged in a later amended petition that trial counsel was ineffective when he failed to object: (1) to evidence of the victim's positive character traits during trial; (2) to evidence of the Petitioner's prior bad acts; and (3) to the victim's testimony that another witness would have corroborated her account of the incident.[1] The post-conviction court held a hearing on November 30, 2022, during which the Petitioner and trial counsel testified.

### 1.    Petitioner's Testimony

In his testimony, the Petitioner denied trying to strike the victim. The Petitioner described his relationship with the victim and discussed her behavior, including an instance where she allegedly threatened him with a knife.

---

[1]    In his original and amended post-conviction petitions, the Petitioner raised several claims for relief, but he presents only these three issues on appeal. As such, our opinion here focuses only on the issues raised for decision in this Court. *See State v. Bristol*, 654 S.W.3d 917, 923 (Tenn. 2022) ('[A]n appellate court's authority 'generally will extend only to those issues presented for review.'" (quoting Tenn. R. App. P. 13(b))).

Concerning the May 12, 2018, incident, the Petitioner claimed that from the time the victim arrived in the alley, she was continuously argumentative and demanding, which led to a heated exchange. He admitted to threatening to "knock [her] teeth out" but denied using a metal pipe as a weapon. He explained that he had a sock on his hand to clean up trash, including a piece of metal, which he put in a barrel. The Petitioner testified that he identified witnesses who could have corroborated his version of events. However, two of these witnesses, Ms. Glenda Almond and Mr. Mike Hargrove, had died before trial.

The Petitioner testified that trial counsel advised him not to accept a plea agreement, which would have resulted in him serving a year in custody with another three years on probation. According to the Petitioner, trial counsel told him the offense was a misdemeanor offense for which the jury would not convict. As to trial counsel's representation, the Petitioner testified that trial counsel did not interview his witnesses or have them testify at the trial.

## 2. Trial Counsel's Testimony

For his part, trial counsel testified that he had been licensed for seven years and primarily practiced criminal defense. During his representation of Petitioner, trial counsel focused on negotiating a plea due to the Petitioner's extensive criminal history and the evidence against him. Despite trial counsel's efforts to negotiate a more favorable agreement, the Petitioner rejected a plea offer and opted for trial.

In his preparations for trial, trial counsel noted that two of the Petitioner's witnesses had died. Trial counsel attempted to locate a third possible witness, but could not find him.

Trial counsel testified that the trial strategy was to attack the victim's credibility and to contest the element of fear of bodily injury in the aggravated assault charge. In part, he wanted to show that the victim had a motive to falsely accuse the Petitioner following a breakup in their relationship. Trial counsel also wanted to develop that the victim suffered from an unrelated brain injury and had memory issues. Trial counsel testified that he knew the victim was in a wheelchair, but he did not consider filing a motion in limine to keep the jury from seeing her enter the courtroom.

With respect to the victim's testimony, trial counsel stated that the victim rambled and that he objected "multiple times[.]" He did not object, however, when she mentioned that she helped other unhoused community members. Trial counsel testified that he was "in the midst of objecting" to her testimony that the Petitioner had made threats in a store or slashed some tires when the prosecutor "directed away from that as quickly as he could."

3

Trial counsel noted that the victim described herself as a domestic violence survivor during a "monologue." He said that he did not wish to raise too many objections during her testimony because she was testifying about the "different memory issues" she had. As he recounted, "It just wasn't worth breaking up the whole monologue of her having memory issues."

Trial counsel stated that he did not object to the victim's brief mention of a five-year-old child because she was "going off on a tangent," and he was able to redirect her. He also did not raise a hearsay objection in relation to Ms. Almond because the victim "didn't really say any statements that [Ms. Almond] said." Trial counsel agreed, however, that he did not preserve a hearsay issue for the direct appeal.

### 3.    Denial of Post-Conviction Relief

Following the testimony, the post-conviction court took the matter under advisement and issued a written order denying post-conviction relief on January 24, 2023. In reviewing claims that trial counsel did not appropriately object to the victim's testimony, the court credited counsel's testimony that he made a strategic decision to limit the number of objections. The court also found that evidence related to the victim, including her being a domestic violence victim, her brain injury, and her history with the Petitioner, would have been admissible to establish her fear of the Petitioner's actions.

The post-conviction court also found that the Petitioner failed to prove various allegations. The court concluded that the Petitioner did not establish what hearsay statements from Ms. Almond should have been excluded and that it heard "no substantive testimony about Petitioner's alleged comments to an unnamed five-year-old."

With respect to the Petitioner's claim that trial counsel should have introduced evidence of the victim's prior bad acts, the court found that the Petitioner failed to prove the allegations by clear and convincing evidence. It also concluded that, depending on the type of evidence involved, it could have opened the door to admission of the Petitioner's criminal history, which dated back to 1996.

The Petitioner filed a timely notice of appeal on February 22, 2023.

4

## STANDARDS OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). In this case, the principal issue is whether the post-conviction court properly denied relief because the Petitioner failed to show that he received the ineffective assistance of counsel. As our supreme court has made clear,

> Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this Court reviews de novo. Witness credibility, the weight and value of witness testimony, and the resolution of other factual issues brought about by the evidence are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is otherwise. On the other hand, we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review.

*Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted).

## ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018). A post-conviction petitioner has the burden of proving his or her allegations of fact with clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2018). For evidence to be clear and convincing, "it must eliminate any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (quoting *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012)).

Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that all criminal defendants "shall enjoy the right . . . to have the [a]ssistance of [c]ounsel." "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). Accordingly, a petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional

claim cognizable under the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see also Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 418-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). A petitioner may establish that counsel's performance was deficient by showing that "'counsel's representation fell below an objective standard of reasonableness.'" *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As our supreme court has also recognized, this Court must look to "all the circumstances" to determine whether counsel's performance was reasonable and then objectively measure this performance "against the professional norms prevailing at the time of the representation." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688).

"If the advice given or services rendered by counsel are 'within the range of competence demanded of attorneys in criminal cases,' counsel's performance is not deficient." *Phillips*, 647 S.W.3d at 407 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Notably, because this inquiry is highly dependent on the facts of the individual case, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

In addition, a petitioner must establish that he or she has been prejudiced by counsel's deficient performance such that the performance "'render[ed] the result of the trial unreliable or the proceeding fundamentally unfair.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In other words, a petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Howard*, 604 S.W.3d at 58 (quoting *Strickland*, 466 U.S. at 694).

In this case, the Petitioner argues that the trial court erred in denying his petition for post-conviction relief. More specifically, he asserts that trial counsel was ineffective when he failed to object: (1) to evidence of the victim's positive character traits during trial; (2) to evidence of his prior bad acts; and (3) to the victim's testimony that another witness would have corroborated her account of the incident. He also argues that the cumulative effect of trial counsel's deficiencies was sufficient to establish that he was denied the effective assistance of counsel.

We address each of these issues in turn.

6

**A.**    **FAILURE TO OBJECT TO VICTIM'S POSITIVE CHARACTER TRAITS**

The Petitioner first argues that trial counsel failed to object to "various positive or sympathetic characteristics of the alleged victim referenced at trial." More specifically, the Petitioner asserts that trial counsel should have sought the exclusion of evidence that the victim "was a domestic violence survivor, a heroine to homeless people and bound to a wheelchair." The Petitioner further argues that this evidence was irrelevant and only served to elicit sympathy for the victim.

In response, the State argues that the post-conviction court correctly found that this evidence was admissible to show the victim's reasonable fear of the Petitioner. It also asserts that the evidence was relevant to show why the victim was in the alley when the Petitioner threatened her. It finally argues that the post-conviction court properly concluded that trial counsel made a strategic decision not to object to this relevant evidence. We agree with the State.

As an initial matter, "[t]here is no obligation on a lawyer to object at every opportunity." *Whitehair v. State*, No. M2019-00517-CCA-R3-PC, 2020 WL 916061, at *19 (Tenn. Crim. App. Feb. 26, 2020) (citation omitted), *perm. app. denied* (Tenn. July 17, 2020). Even apart from matters of trial counsel's strategy that we discuss in the next section, a post-conviction petitioner asserting that trial counsel was ineffective in failing to object to particular evidence must also show:

- what specific evidence or testimony was subject to an objection, *e.g.*, *Adams v. State*, No. W2020-00958-CCA-R3-PC, 2021 WL 4477937, at *5 (Tenn. Crim. App. Sept. 30, 2021), *perm. app. denied* (Tenn. Feb. 9, 2022);

- what objection should have been made, *e.g.*, *Richardson v. State*, No. W2021-00981-CCA-R3-PC, 2022 WL 4494164, at *9 (Tenn. Crim. App. Sept. 28, 2022), *no perm. app. filed*;

- whether the trial court would have sustained the objection, *e.g.*, *Wells v. State*, No. E2020-01278-CCA-R3-PC, 2021 WL 5811248, at *13 (Tenn. Crim. App. Dec. 7, 2021), *perm. app. denied* (Tenn. Mar. 23, 2022); and

- how the result of the trial would have been different considering the other evidence presented, *e.g.*, *Hawkins v. State*, No. E2018-01682-CCA-R3-PC, 2019 WL 5608158, at *13 (Tenn. Crim. App. Oct. 30, 2019), *no perm. app. filed*.

In this case, the post-conviction court denied relief on this ground, in part, because it found that the challenged evidence would have been admissible at trial. The record supports this finding. As charged in the Petitioner's case, an essential element of aggravated assault was that the Petitioner caused the victim to reasonably fear imminent bodily injury through the use or display of a deadly weapon. Tenn. Code Ann. §§ 39-13-102(a)(1)(A)(iii); 39-13-101(a)(2). This Court has recognized that "[t]he element of 'fear' is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury. A victim's fear may be inferred from circumstances surrounding the offense." *State v. Vales*, No. W2014-00048-CCA-R3-CD, 2015 WL 1094667, at \*5 (Tenn. Crim. App. Mar. 9, 2015) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. June 11, 2015).

At trial, the victim testified about the fear she experienced from the assault. She stated that she suffered from a brain injury from a previous domestic assault and that another injury to her head could affect her memory and result in her being placed "in a home." Similarly, she testified that her brain injury caused her to fall sometimes, which helped explain why she was in a wheelchair during the assault. As such, these surrounding circumstances were relevant for the jury to consider whether the victim reasonably feared imminent bodily injury from the Petitioner's use of a deadly weapon.

In addition, our supreme court has recognized that "[e]vents do not occur in a vacuum, and in many cases, knowledge of the events surrounding the commission of the crime may be necessary for the jury to realistically evaluate the evidence." *State v. Gilliland*, 22 S.W.3d 266, 272 (Tenn. 2000) (citation and internal quotation marks omitted). As such, contextual background evidence *may* be admissible under Rules 401 and 402 when it would "substantially assist the jury in its understanding of the issues or [to] place the material evidence in its proper context."[2] *Id.* In this case, the victim testified that she was in the alley because she went there to bring food to Ms. Almond. Evidence that the victim assisted unhoused community members was relevant for context to show how the victim knew the other individuals involved and why she was with them when the Petitioner assaulted her. This background, in fact, helped place the material events in their proper context. We agree with the post-conviction court that Petitioner has not shown that an objection to this evidence based on relevance would have been sustained.

---

[2] Of course, when the contextual background evidence consists of other crimes, wrongs, or acts subject to Tennessee Rule of Evidence 404(b), a heightened showing is required before the evidence may be admitted. *See Gilliland*, 22 S.W.3d at 272 ("[W]e hold that contextual background evidence, which contains proof of other crimes, wrongs, or acts, may be offered as an 'other purpose' under Rule 404(b) when exclusion of that evidence would create a chronological or conceptual void in the presentation of the case and that void would likely result in significant jury confusion concerning the material issues or evidence in the case.").

The Petitioner has also not shown that the trial court would have sustained a further objection under Tennessee Rule of Evidence 403. Although he argues now that the evidence was unfairly prejudicial, he ignores that "Rule 403 is a rule of admissibility, and it places a heavy burden on the party seeking to exclude the evidence." *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). Indeed, "a trial court should not exclude evidence under Tenn. R. Evid. 403 when the balance between the probative worth of the evidence and the countervailing factors is fairly debatable." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999). In this case, the contested evidence had important value for contextual background, and even if its probative value were "fairly debatable," the Petitioner has not shown that the trial court would have excluded the evidence had trial counsel objected pursuant to Rule 403.

We have recognized that trial counsel's failure to object to admissible evidence cannot support a claim of deficient performance. *E.g.*, *Carpenter v. State*, No. W2019-01248-CCA-R3-PC, 2020 WL 5626233, at *8 (Tenn. Crim. App. Sept. 18, 2020), *no perm. app. filed*; *Smith v. State*, No. M2020-00559-CCA-R3-PC, 2021 WL 1561396, at *14 (Tenn. Crim. App. Apr. 21, 2021), *perm. app. denied* (Tenn. Aug. 6, 2021). Accordingly, because the Petitioner has not shown that the contested evidence was inadmissible, we affirm the judgment of the post-conviction court denying relief on these grounds.

## B.     FAILURE TO OBJECT TO PETITIONER'S PRIOR BAD ACTS

The Petitioner next asserts that trial counsel rendered ineffective assistance in failing to object to evidence of his prior "bad acts." More specifically, the Petitioner argues that trial counsel should have objected to testimony that he slashed tires in the past; said "something reprehensible to a five-year-old"; was "banned from a trailer park"; and previously threatened the victim. In response, the State argues that the post-conviction court correctly found that trial counsel made a reasonable strategic decision not to object. We again agree with the State.

Generally, "the decision of when and whether to object at trial is a matter of strategy that is within trial counsel's discretion." *Richardson v. State*, No. W2021-00981-CCA-R3-PC, 2022 WL 4494164, at *9 (Tenn. Crim. App. Sept. 28, 2022), *no perm. app. filed*. To that end, we have recognized various reasons why trial counsel may strategically refrain from objecting to evidence, including

- to avoid emphasizing unfavorable statements, *Fuller v. State*, No. W2018-00518-CCA-R3-PC, 2019 WL 192444, at *7 (Tenn. Crim. App. Jan. 11, 2019), *perm. app. denied* (Tenn. May 20, 2019);

- to avoid alienating the jury, *McMillon v. State*, No. E2020-01260-CCA-R3-PC, 2022 WL 1002410, at *9 (Tenn. Crim. App. Apr. 4, 2022), *perm. app. denied* (Tenn. Sept. 28, 2022); and

- to receive favorable or helpful evidence for the defense, *State v. Blocker*, No. W2020-00543-CCA-R3-PC, 2021 WL 3140357, at *9 (Tenn. Crim. App. July 26, 2021), *perm. app. denied* (Tenn. Dec. 8, 2021).

The post-conviction court found that trial counsel made a reasonable strategic decision not to object to this evidence, and the record supports this finding in several ways. First, trial counsel testified that he wished to show that the victim had a motive to lie based on the deterioration of her relationship with the Petitioner. He believed that letting "her talk a little bit about the relationship" would reveal this motive.

Second, trial counsel believed the evidence reflected poorly on the victim's credibility. He testified that much of the objectionable evidence about the Petitioner came in the middle of "ramblings" by the victim. He stated that he chose not to object to much of her testimony because "[i]t wasn't worth breaking up the whole monologue of her having memory issues," and he did not want to "give her time to think about what she was saying in the moment." Trial counsel explained that he intended to exploit her frequent tangents and apparent confusion, including during the above exchange, to draw attention to her brain injury and to attack her credibility. Finally, trial counsel said that he did not object to other testimony involving slashed tires because it was a passing remark, and the testimony moved on quickly.

When considering a claim of ineffective assistance of counsel, this Court begins with "the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson*, 453 S.W.3d at 393. We will "not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Berry v. State*, 366 S.W.3d 160, 172 (Tenn. Crim. App. 2011) (citation omitted). Because the record supports the finding that trial counsel made reasonable strategic decisions to refrain from objecting to the victim's testimony, we affirm the judgment of the post-conviction court denying relief on these grounds.

C. FAILURE TO OBJECT TO HEARSAY EVIDENCE

The Petitioner next argues that trial counsel rendered ineffective assistance in failing to object to hearsay evidence that Ms. Almond could corroborate the victim's version of events. In response, the State argues that the post-conviction court properly denied relief

because the Petitioner has not identified any hearsay statements attributable to Ms. Almond. We agree with the State.

In his brief, the Petitioner does not identify the hearsay statements he believes should have been excluded. From our own review of the trial transcript, the victim testified that, after the assault, "I told [Ms. Almond], I said, 'I've got to go down there and meet the police.' She was my witness. She didn't lie to the police[,] and I wish she was here today."

The post-conviction court found that the Petitioner failed to identify "specific testimony involving statements made by [Ms. Almond] characterized as hearsay." The record supports this finding. As we noted above, when a post-conviction petitioner asserts that trial counsel was ineffective in failing to object to evidence, he or she must first identify what specific evidence or testimony was subject to an objection. *E.g.*, *Adams*, 2021 WL 4477937, at *5. Accordingly, we affirm the judgment of the post-conviction court denying relief on these grounds.

## D.    CUMULATIVE ERROR

Finally, the Petitioner argues that trial counsel's multiple failures to object to evidence "at [the] very least constituted cumulative error." This Court has recognized that, "in the context of an ineffective assistance of counsel claim, cumulative error examines the prejudicial effect of multiple instances of deficient performance." *Harris v. State*, No. E2022-00446-CCA-R3-PC, 2022 WL 17729352, at *9 (Tenn. Crim. App. Dec. 16, 2022) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Apr. 18, 2023). To that end, and perhaps obviously, a petitioner "who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of counsel's errors." *Newton v. State*, No. M2016-02240-CCA-R3-PC, 2017 WL 5901032, at *10 (Tenn. Crim. App. Nov. 29, 2017), *perm. app. denied* (Tenn. Mar. 14, 2018).

In this case, the record does not reflect any deficient performance by trial counsel. As such, no cumulative error claim is possible. *See Martin v. State*, No. E2022-00688-CCA-R3-PC, 2023 WL 3361543, at *5 (Tenn. Crim. App. May 11, 2023) ("[C]umulative error does not apply in post-conviction cases where the petitioner has failed to show any instance of deficient performance by counsel."), *perm. app. denied* (Tenn. Sept. 11, 2023). We conclude that the Petitioner is not entitled to relief on the basis of cumulative error.

11

**CONCLUSION**

In summary, we hold that the Petitioner was not denied the effective assistance of counsel during his trial. Accordingly, because the Petitioner's conviction is not void or voidable because of the violation of a constitutional right, we respectfully affirm the denial of post-conviction relief in all respects.

_____
TOM GREENHOLTZ, JUDGE

12