IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 19, 2024

## BOBBY JUNIOR LOVIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Claiborne County**
**No. 22CR3857     Zachary R. Walden, Judge**
_____

### No. E2024-00234-CCA-R3-PC
_____


A Claiborne County jury convicted the Petitioner, Bobby Junior Lovin, of two counts of rape of a child. The trial court imposed an effective sentence of forty years to be served in the Tennessee Department of Correction. Thereafter, he filed for post-conviction relief, alleging that his trial lawyers were ineffective by failing to (1) advise him on the range of punishment he could receive if convicted; (2) investigate the case and present witnesses at trial; (3) advise him so he could make an informed decision regarding a guilty plea; and (4) advise him of his right to testify, which deprived him of the ability to make a knowing and voluntary decision whether to testify. The post-conviction court denied the petition, and the Petitioner appealed. Upon our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Jordan C. Long, Tazewell, Tennessee, for the appellant, Bobby Junior Lovin.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Hornsby, Assistant Attorney General; Jared Effler, District Attorney General; and Graham E. Wilson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTUAL BACKGROUND

## A.  PETITIONER'S OFFENSES

A Claiborne County jury found the Petitioner guilty of two counts of rape of a child. *See State v. Lovin*, No. E2021-00705-CCA-R3-CD, 2022 WL 3078579, at *5 (Tenn. Crim. App. Aug. 3, 2022), *no perm. app. filed*.  The trial court sentenced the Petitioner as a Range II, multiple offender to thirty-two years for each conviction.  It aligned the sentences consecutively for an effective sentence of sixty-four years.  *Id.*

On direct appeal, the Petitioner challenged the legal sufficiency of the evidence sustaining his convictions and the admission of the victim's forensic interview at trial.  *Id.* at *5-10.  This court affirmed the Petitioner's convictions on August 3, 2022, and he did not seek further review from the supreme court.  *Id.*

## B.  POST-CONVICTION PROCEEDINGS

On October 17, 2022, the Petitioner filed a pro se petition for post-conviction relief, asserting that he was denied the effective assistance of counsel.  Following the appointment of counsel, an amended petition was filed.  Relevant to this appeal, the petitions alleged several instances of ineffective assistance, including that trial counsel (1) failed to inform the Petitioner of the potential punishment range for the offense, including the possibility of consecutive sentencing; (2) neglected to investigate the Petitioner's assertion that the victim had previously made similar accusations against someone else; (3) failed to properly advise him of sentencing issues during plea negotiations; and (4) did not permit the Petitioner to testify.

During the hearing, the Petitioner testified and offered into evidence the record from this court on his direct appeal.  However, he offered no other proof supporting his petition.  The State presented the testimony of both the original trial counsel and co-counsel, who entered the case closer to trial.[1]

---

[1]  In his allegations of ineffective assistance, the Petitioner does not generally distinguish between original counsel and co-counsel.  At the hearing, co-counsel testified that he and original counsel worked on the case together and did not have a "lead" or "second" counsel designation in the defense.

### 1.    The Petitioner's Testimony

The Petitioner testified that he had limited contact with his original counsel, communicating in person only "three times" outside of court appearances. He described each meeting as brief, lasting no more than fifteen minutes. Co-counsel joined the case six months before trial, but the Petitioner had only two or three discussions with him, each lasting approximately twenty minutes.

The Petitioner stated that counsel did not inform him of the penalties for the charges. He claimed to have learned during trial that the offense of rape of a child carried a sentence of twenty-five to forty years per count, with the possibility of consecutive sentencing. Until then, he believed from other inmates that his potential exposure was a maximum of ten years.

Regarding plea offers, the Petitioner testified that original counsel presented an initial offer of twenty-five years, which the Petitioner declined, asserting his innocence. Later, co-counsel informed him of a second offer of seventeen years. The Petitioner stated that, had he known about the possibility of an eighty-year sentence, he would have accepted the seventeen-year offer despite maintaining his innocence.

The Petitioner also testified about a lack of investigation by counsel. He claimed his suggestions to photograph the scene and interview witnesses, including Jamie Wisman, were ignored. He alleged that counsel refused to allow Ms. Wisman to testify after the prosecutor threatened her with perjury charges.

Finally, the Petitioner insisted that he wanted to testify at trial. According to his testimony, counsel repeatedly steered him away from the subject and discouraged him from testifying, citing potential harm to his case. Despite these warnings, the Petitioner believed his testimony would have changed the trial's outcome. He acknowledged telling the court during the *Momon* hearing[2] that he did not wish to testify but explained that he lied because counsel allegedly threatened to bar him from participating in the remainder of the trial.

---

Except where it is necessary to distinguish between the two, we refer to both trial counsel collectively as "counsel."

[2]    In *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), our supreme court "adopted a prophylactic procedure designed to ensure that a defendant's waiver of the fundamental right to testify is voluntary, knowing, and intelligent." *Mobley v. State*, 397 S.W.3d 70, 90 (Tenn. 2013). In this procedure, trial counsel may make inquiry of the defendant in open court outside the presence of the jury, or the defendant may execute a written waiver of the right to testify. *Momon*, 18 S.W.3d at 162, 175. In this case, co-counsel conducted the *Momon* hearing with the Defendant in open court shortly before the defense rested its case.

The Petitioner also conceded that his decision not to testify prevented the disclosure of his prior convictions for theft and burglary.

## 2. Testimony of Original Counsel and Co-Counsel

Original counsel testified that he had numerous discussions with the Petitioner before the trial. Co-counsel joined the defense six months before trial to assist due to original counsel's heavy caseload. By then, plea negotiations had concluded, and the trial date was set. Original counsel believed that a conviction was likely.

Original counsel testified that he extensively discussed the Petitioner's sentencing exposure, warning him that consecutive sentencing was probable. He recalled a similar case in which a client convicted of multiple counts of child rape received a sixty-four-year sentence. He also emphasized that the trial court in the Petitioner's case was known for imposing harsh sentences in child rape cases. Original counsel tried to get the Petitioner to accept a plea offer and wanted him to submit a counteroffer proposing a seventeen-year sentence. The Petitioner refused to do so.

Each counsel testified that they spoke with most of the suggested witnesses with their investigator. Family members of the victim denied any prior false allegations. They also investigated the Dixie Plaza Hotel, where the victim had previously lived, but obtained no helpful information. Counsel interviewed Ms. Wisman but chose not to call her as a witness, citing her lack of credibility and inconsistent statements.

Regarding the Petitioner's desire to testify, original counsel noted that the Petitioner performed poorly during practice examinations, demonstrating a propensity to argue rather than testify effectively. Both counsel advised against testifying, explaining that the Petitioner's prior convictions and previous accusations of a similar crime could become admissible if he took the stand. Both counsels also denied ever forbidding the Petitioner from testifying, stating that the decision was ultimately the Petitioner's to make.

## 3. Denial of Post-Conviction Relief

On January 18, 2024, the post-conviction court denied the petition for relief in a thorough order. The court credited the testimonies of original counsel and co-counsel while discrediting the Petitioner's testimony. The court found that the Petitioner had been adequately advised about sentencing consequences. It also determined that the Petitioner did not want to plead guilty because he insisted that he was innocent and accredited trial counsels' testimonies that a seventeen-year offer never existed.

The court further concluded that counsel provided adequate representation, including investigating the case and preparing the Petitioner for trial. It found that the decisions not to call certain witnesses and to advise the Petitioner not to testify were reasonable strategic decisions. The court found no evidence of deficiency in the performance of counsel or resulting prejudice to the Petitioner.

The Petitioner filed a timely notice of appeal on February 14, 2024.

## ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018). A post-conviction petitioner has the burden of proving his or her allegations of fact with clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2018). For evidence to be clear and convincing, "it must eliminate any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (quoting *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012)).

### A. STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). In this case, the principal issue is whether the post-conviction court properly denied relief because the Petitioner failed to show that he received the ineffective assistance of counsel. As our supreme court has made clear,

> [a]ppellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this [c]ourt reviews de novo. Witness credibility, the weight and value of witness testimony, and the resolution of other factual issues brought about by the evidence are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is otherwise. On the other hand, we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review.

*Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted).

5

## B.    INEFFECTIVE ASSISTANCE OF COUNSEL

In this appeal, the Petitioner alleges that he was denied the effective assistance of counsel during his trial. Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). Accordingly, a petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see also Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 418-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). A petitioner may establish that counsel's performance was deficient by showing that "counsel's representation fell below an objective standard of reasonableness." *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As our supreme court has also recognized, this court must look to "all the circumstances" to determine whether counsel's performance was reasonable and then objectively measure this performance "against the professional norms prevailing at the time of the representation." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688).

"If the advice given or services rendered by counsel are 'within the range of competence demanded of attorneys in criminal cases,' counsel's performance is not deficient." *Phillips*, 647 S.W.3d at 407 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Notably, because this inquiry is highly dependent on the facts of the individual case, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

In addition, a petitioner must establish that he or she has been prejudiced by counsel's deficient performance such that the performance "render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In other words, a petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Howard*, 604 S.W.3d at 58 (quoting *Strickland*, 466 U.S. at 694).

In this appeal, the Petitioner argues that he was denied the effective assistance of counsel because his trial counsel failed to (1) advise him on the range of punishment he could receive for the charged offense and of the possibility of consecutive sentencing; (2) properly investigate the case and to present witnesses at trial, specifically failing to investigate the witnesses the Petitioner suggested and to call Ms. Wisman as a witness at trial; (3) properly advise him of the potential sentencing consequences, the trial strategy, and the results of the investigation so he could made an informed decision regarding a guilty plea; and (4) properly advise him of his right to testify.

We address each of these issues in turn.

### 1.      Failure to Advise on Possible Punishments

The Petitioner first asserts that his trial counsel were ineffective by failing to advise him on the range of punishment he could receive for the charged offense and by failing to inform him of the possibility of consecutive sentencing. The State responds that the post-conviction court accredited counsels' testimonies that they advised the Petitioner about ranges of punishment and consecutive sentencing. We agree with the State.

Our supreme court has recognized that trial counsel has a duty to "ascertain the status of the law" and to advise a defendant about the consequences of various dispositions. *See Grindstaff v. State*, 297 S.W.3d 208, 220 (Tenn. 2009). Indeed, the court has cited the American Bar Association's *Standards for Criminal Justice: Prosecution and Defense Function* (3d ed. 1993) as helping to inform this duty:

> Defense counsel's preparation should also include familiarization with the court's practices in exercising sentencing discretion, the practical consequences of different sentences, and the normal pattern of sentences for the offense involved, including any guidelines applicable at either the sentencing or parole stages. The consequences of the various dispositions available should be explained fully by defense counsel to the accused.

*Calvert v. State*, 342 S.W.3d 477, 488 (Tenn. 2011); *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides.").

7

In this case, the accredited testimony of counsel is that they advised the Petitioner about the sentences he could receive and the possibility, indeed the likelihood, of consecutive sentencing. The post-conviction court also found that counsel appropriately explained the ranges of punishment the Petitioner faced at trial and cautioned that he ran a risk of receiving a sentence beyond life expectancy. The record does not preponderate against these findings.

In arguing against this conclusion, the Petitioner maintains that his case is similar to *Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). In *Walton*, the defendant and his parents testified on post-conviction that his attorney advised him that he could be paroled after serving seven and one-half years in confinement. *Id.* at 54. Counsel denied giving such advice. *Id.* Without making a credibility determination, the post-conviction court denied the petition. *Id.* This court reversed the denial and remanded the case to the trial court for a credibility determination on the factual allegations made at the hearing. *Id.* at 55.

*Walton* has no application to this case. Here, the post-conviction court expressly credited trial counsels' testimonies and concluded that they gave appropriate advice to the Petitioner as to sentencing alternatives. The Petitioner's argument is without merit. We affirm the post-conviction court's judgment denying relief on this ground.

## 2. Failure to Investigate the Case or Call Witnesses

The Petitioner next argues that his trial counsel were ineffective by failing to properly investigate the case and present witnesses at trial. Specifically, the Petitioner notes that he testified that he had limited conversations with counsel, that they did not interview the witnesses the Petitioner suggested, and that they did not investigate the victim's prior allegations against her father. The Petitioner also complains about counsels' failure to call Ms. Wisman as a witness at trial to testify regarding the victim's previous allegation that her father had sexually abused her. The State responds that the post-conviction court accredited counsels' testimonies that they thoroughly investigated the Petitioner's case and made a strategic choice not to call Ms. Wisman. We agree with the State.

"Trial counsel has a duty to investigate and prepare a case, and this duty derives from counsel's basic function to make the adversarial testing process work in the particular case." *Nesbit*, 452 S.W.3d at 796 (citation and internal quotation marks omitted). Counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 691). However, this duty of reasonable investigation "does not require that counsel leave no stone unturned." *Cribbs v. State*, No. W2006-01381-CCA-

R3-PD, 2009 WL 1905454, at *48 (Tenn. Crim. App. July 1, 2009), *perm. app. denied* (Tenn. Dec. 21, 2009). Instead, "[r]easonableness should be guided by the circumstances of the case, including information provided by the defendant, conversations with the defendant, and consideration of readily available resources." *Id.*; *Pence v. State*, No. E2019-01942-CCA-R3-PC, 2021 WL 857612, at *8 (Tenn. Crim. App. Mar. 8, 2021), *no perm. app. filed.*

In this case, the post-conviction court accredited counsels' testimonies and concluded that they and their investigator performed a thorough investigation and made strategic decisions regarding which witnesses to call at trial. The court found that counsel, with the assistance of the defense investigator, interviewed numerous witnesses, visited the Dixie Plaza Hotel, and visited the crime scene. It also determined that counsel refused to call Ms. Wisman as a witness due to concerns about her credibility and the risk of opening the door to evidence unfavorable to the Petitioner. The court concluded that counsel were not deficient in investigating the case or calling witnesses.

The Petitioner disagrees with this conclusion and maintains that his case is similar to *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In *Burns*, the defendant's attorney failed to explore and present proof at trial regarding a legitimate alternate theory regarding how the victim was killed. *Id.* at 463. Our supreme court remanded the case for a new trial, concluding that the proof of the defendant's guilt was minimal and the possibility of an alternate theory would have raised reasonable doubt about the defendant's guilt. *Id.*

*Burns* has no application to this case. The supreme court has emphasized that "when a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Taylor v. State*, 443 S.W.3d 80, 85 (Tenn. 2014) (quoting *Cauthern v. State*, 145 S.W.3d 571, 616 (Tenn. Crim. App. 2004)). Under these circumstances, a post-conviction petitioner must "produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." *Black v. State*, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990).

Unlike *Burns*, the Petitioner here failed to present any witnesses or evidence that counsel failed to discover through additional investigation. He did not call Ms. Wisman at the post-conviction hearing or otherwise show what effect additional investigation would have had on the trial of the case. *Harbison v. State*, No. E2019-01683-CCA-R3-PC, 2020 WL 6747023, at *16 (Tenn. Crim. App. Nov. 17, 2020) ("Because the Petitioner failed to prove that a more thorough investigation would have produced evidence that likely would have influenced the verdict, he is not entitled to relief on this basis."), *perm. app. denied* (Tenn. Mar. 17, 2021). As the post-conviction court recognized, the Petitioner may not rely upon his speculation about how various witnesses would have testified had they been

called.  *Black*, 794 S.W.2d at 757.  We conclude that the post-conviction court properly held that counsel were not deficient in this regard.

### 3.      Failure to Properly Advise During Plea Negotiations

The Petitioner next argues that his trial counsel were ineffective during plea negotiations.  More specifically, he asserts that his counsel failed to confer with him about trial strategy and the results of their investigation, depriving him of the ability to make an informed decision about a plea.  He also claims that the State extended a plea offer for him to serve seventeen years and that, had he known of his sentencing exposure, he would have accepted that plea.  The State responds that the evidence did not establish that a seventeen-year plea offer ever existed or that the Petitioner would have accepted any plea offer because he insisted upon his innocence.  We agree with the State.

A criminal defendant is entitled to reasonable assistance of counsel during a criminal prosecution, including during plea bargaining.  *See Missouri v. Frye*, 566 U.S. 134, 143 (2012).  In a case where no plea occurred, a defendant asserting that trial counsel's performance was deficient during the plea negotiations process must first show the State actually extended a plea offer.  *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise."); *Goodman v. State*, No. E2021-00914-CCA-R3-PC, 2022 WL 2733847, at *5 (Tenn. Crim. App. July 14, 2022), *no perm. app. filed*.  The petitioner must then show that "(1) [he or she] would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed."  *Nesbit*, 452 S.W.3d at 800-01.

In this case, the post-conviction court determined that the State did not extend a plea offer for the Petitioner to serve seventeen years.  The court accepted original counsel's testimony that he did not recall any such offer from the State.  Instead, he recalled advising the Petitioner to propose his own seventeen-year offer to the State, but the Petitioner declined.  We conclude that the Petitioner has failed to show by clear and convincing evidence that the State extended a plea offer to serve seventeen years.  *See Singleton v. State*, No. W2011-02569-CCA-R3-PC, 2012 WL 5355699, at *5 (Tenn. Crim. App. Oct. 29, 2012) ("[W]e agree with the post-conviction court that the Petitioner failed to establish deficient representation on the part of Trial Counsel.  First, the Petitioner has failed to establish by clear and convincing evidence the existence of a thirteen-year plea offer."), *no perm. app. filed*.

The post-conviction court also discredited the Petitioner's assertion that he would have accepted a seventeen-year plea offer had he been aware of the sentencing ranges.  In

addition to finding that counsel did advise the Petitioner of the sentencing ranges, the court determined that the Petitioner previously declined one plea offer, did not authorize further negotiations, and maintained his innocence throughout. We also conclude that the Petitioner has failed to show by clear and convincing evidence that he would have accepted the seventeen-year offer had one been made. *E.g.*, *Nesbit*, 452 S.W.3d at 801.

The record fully supports the post-conviction court's conclusion that the Petitioner was not denied the effective assistance of counsel during plea negotiations. He is not entitled to relief on this ground.

### 4.      Failure to Advise on the Right to Testify

Finally, the Petitioner asserts that trial counsel failed to properly advise him of his right to testify, which deprived him of the ability to make a knowing and voluntary decision whether to testify. He maintains that his testimony at the post-conviction hearing revealed that counsel refused to discuss his testifying at trial. The State responds that the post-conviction court accredited the testimonies of counsel, who each testified that they advised the Petitioner of his right to testify and confirmed the Petitioner decided not to testify. We agree with the State.

"[A] criminal defendant has a constitutional right to testify at trial." *Momon*, 18 S.W.3d at 157. Trial counsel should give "careful and thorough advice" on the benefits and risks of testifying. *Wilcoxson v. State*, 22 S.W.3d 289, 318 (Tenn. Crim. App. 1999). Counsel can strategically advise a defendant against testifying if he or she may not be a good witness. *See Hill v. State*, No. E2022-01061-CCA-R3-PC, 2023 WL 5216981, at *7 (Tenn. Crim. App. Aug. 15, 2023), *perm. app. denied* (Tenn. Jan. 10, 2024). Counsel may also recommend that a defendant not testify where the defendant will be impeached by prior similar acts and where the defendant may become angry and argue with the prosecutor. *See Baechtle v. State*, No. W2020-01429-CCA-R3-PC, 2021 WL 4270905, at *4 (Tenn. Crim. App. Sept. 21, 2021), *no perm. app. filed*; *Freeman v. State*, No. E2021-01039-CCA-R3-PC, 2022 WL 2678878, at *8 (Tenn. Crim. App. July 12, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022).

In this case, the post-conviction court found that counsel prepared the Petitioner to testify but advised him against doing so. The court credited trial counsels' testimonies that they discussed the right to testify with the Petitioner and performed a mock examination before trial. Co-counsel identified the Petitioner's prior convictions that could be used to impeach his testimony, particularly a past similar sexual assault allegation. Counsel also noted that the Petitioner preferred arguing against the State's evidence rather than presenting his version of events.

At the *Momon* hearing at trial, the Petitioner confirmed that he was aware of his right to testify and that he had discussed with his counsel the "pros and cons of testifying in [his] defense or not testifying." He also acknowledged that he had the opportunity to ask questions of his counsel about those issues. Although the Petitioner testified at the post-conviction hearing that he "lied" during the *Momon* hearing and that his counsel prevented him from testifying, the post-conviction court specifically discredited his testimony. The court concluded that the Petitioner failed to show that his counsel were deficient, and the record supports this conclusion.

In support of his claim, the Petitioner cites *Wilcoxson v. State*, 22 S.W.3d 289 (Tenn. Crim. App. 1999). In that case, this court noted the following factors from *State v. Zimmerman*, 823 S.W.2d 220 (Tenn. Crim. App. 1991) that could indicate whether the failure of a defense attorney to call the defendant to testify constitutes ineffective assistance:

(1)     only the victim and the defendant were present when the offense was committed;

(2)     only the defendant could present a "full version of [his] theory of the facts";

(3)     the defendant's testimony could not be impeached by prior criminal convictions;

(4)     the defendant could give an account of the relationship with the victim;

(5)     the attorney had let in objectionable, prejudicial testimony with the intention of clarifying it with the testimony of the defendant.

*Id.* at 318-19. The Petitioner argues that the failure of counsel to advise him to testify was ineffective because only the Petitioner could present a full version of his theory to the jury.

*Wilcoxson* does not indicate that counsels' advice here was deficient. Unlike *Wilcoxson* or *Zimmerman*, counsel here did not promise the jury that the Defendant would testify. Counsel were also concerned that the Petitioner could be impeached with a prior similar sexual offense, and they did not allow objectionable, prejudicial testimony with the intention of later clarifying it with the Petitioner's testimony. *See, e.g.*, *Wade v. State*, No. M2019-00716-CCA-R3-PC, 2021 WL 1886189, at *13 (Tenn. Crim. App. May 11, 2021)

(distinguishing *Zimmerman* on these grounds), *perm. app. denied* (Tenn. Sept. 22, 2021); *Hudson v. State*, No. W2018-01939-CCA-R3-PC, 2020 WL 1466305, at *12 (Tenn. Crim. App. Mar. 23, 2020) (distinguishing *Zimmerman* on these grounds), *no perm. app. filed*. These cases simply have no application here.

The record fully supports the conclusion of the post-conviction court that trial counsel were not deficient in advising the Petitioner about his right to testify. The Petitioner is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the record supports the post-conviction court's finding that the Petitioner was not denied the effective assistance of counsel. Accordingly, because the Petitioner's convictions are not void or voidable because of the violation of a constitutional right, we respectfully affirm the denial of post-conviction relief in all respects.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE